**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOY BRAUNSTEIN, | ) | |
| | ) | Case No. 2:18-cv-788 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| PAWS ACROSS PITSBURGH, *a non-profit organization*, and MINDY JAMES, | ) | ECF No. 14 |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

<u>LISA PUPO LENIHAN</u>, United States Magistrate Judge

This civil rights action arises from the alleged unconstitutional arrest of Plaintiff Joy Braunstein by Defendant Mindy James, who was allegedly acting, at the time, in her capacity as a police officer and board member of Defendant Paws Across Pittsburgh. Plaintiff has brought Fourteenth Amendment claims for malicious prosecution and reckless investigation, as well as a claim for municipal liability under *Monell*, against Defendants. Finally, Plaintiff seeks punitive damages, in addition to compensatory damages, costs, attorneys' fees, and pre- and post-judgment interest. Currently pending before the Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 14). For the reasons that

follow, the Court will grant Defendants' motion, in part, with prejudice and, in part, without prejudice. Specifically, Plaintiff's § 1983 claim for malicious prosecution in violation of the Fourteenth Amendment procedural due process clause in Count I, and Plaintiff's § 1983 claim for reckless investigation in violation of the Fourteenth Amendment substantive due process clause in Count II are dismissed with prejudice. Plaintiff's § 1983 *Monell* claim against Paws and Plaintiff's request for punitive damages are dismissed without prejudice.

## I.    RELEVANT FACTS & PROCEDURAL HISTORY[1]

Plaintiff is the principal owner and CEO of Above the Fray Stables, LLC, a specialty equine business that offers boarding care, colt starting and horse training, as well as horsemanship and showmanship instruction to the general public. Am. Compl., ¶8 (ECF No. 11). Through her business, Plaintiff has spent over $100,000 over the last two years rescuing and relocating horses, and can be credited with rescuing dozens of horses. *Id.* at ¶ 9.

As part of her ongoing business relations, Plaintiff developed a cooperative relationship with Crystal Thornberry, who is the owner of Heart Felt Equine Rescue, a non-profit organization specializing in equine rescue. *Id.* at ¶ 10. Prior to taking over her own facility in February of 2018, Plaintiff would request rescue facilities, including the one owned by Ms. Thornberry, to take custody of various rescued horses. *Id.*

---

[1] In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court assumes all factual allegations to be true.

In July of 2017, Plaintiff and Ms. Thornberry worked together to place a herd of horses from Mississippi at Ms. Thornberry's facility in Pennsylvania. *Id.* at ¶ 19. Plaintiff visited a portion of Ms. Thornberry's property only once in or about August 2017, and interacted with the animals on that portion of her property, where she observed that the horses were provided with shade. *Id.* Plaintiff was also aware that Ms. Thornberry kept the horses separated by fences. *Id.* In October of 2017, Ms. Thornberry moved to a larger property equipped with stalls, run-ins, and a significant pasture. *Id.*

From approximately August to November 2017, Plaintiff became aware that three horses died while entrusted to Ms. Thornberry's care. *Id.* at ¶ 17. Plaintiff contends that to her knowledge, the causes of death of these three horses were not related to a failure to care for the horses or placing the horses in unsafe conditions. *Id.* As such, Plaintiff alleges that the deaths of these horses did not indicate to her that other animals in Ms. Thornberry's care "were at risk of harm or otherwise illegal conduct." *Id.*

On or about January 18, 2108, Defendant Mindy James ("Officer James") charged Ms. Thornberry with twelve counts of animal neglect. *Id.* at ¶ 23. Upon being notified of the charges filed against Ms. Thornberry, Plaintiff took steps to remove all of her personal horses from Ms. Thornberry's farm. *Id.* at ¶ 24. Plaintiff also contacted Officer James to find out more information regarding the charges and to plan for the removal of her horses, and stayed in contact with Officer James until her horses were completely removed from Ms. Thornberry's custody. *Id.* During one of her conversations with

Plaintiff, Officer James confirmed that all of the horses mentioned in the affidavit of probable cause, for which Plaintiff was responsible, were well taken care of and healthy. *Id.* at ¶ 25.

Despite her acknowledgement of the well-being of Plaintiff's horses, on or about February 28, 2018, Officer James charged Plaintiff with two misdemeanor counts of neglect of animals for failing to provide horses with adequate food, water and shelter. *Id.* at ¶¶ 11, 25. Plaintiff alleges that the allegations set forth in the affidavit of probable cause, prepared by Officer James in support of the arrest warrant, are materially false or were fabricated because at all relevant times, all of the horses at issue here and for which Plaintiff was responsible were well taken care of and healthy. *Id.* at ¶¶ 12, 14. Moreover, Plaintiff alleges that she only took actions that were in the best interest of the horses and/or were at the owner's request. *Id.* at 21. On or about March 28, 2018, all of the charges filed against Plaintiff were withdrawn by the Indiana County Assistant District Attorney due to a lack of evidence. *Id.* at ¶ 26.

Essentially, Plaintiff disputes the statements contained in the affidavit of probable cause, and maintains that she was and is unaware of any facts that established that Ms. Thornberry mistreated any of the horses in her care, from the Mississippi herd or otherwise, failed to properly care for them at her facility, or placed them in any danger whatsoever. *Id.* at ¶¶ 16, 20. Plaintiff also contends that the affidavit of probable cause falsely states that she abandoned a horse at Ms. Thornberry's farm, when that horse had been sold to Ms. Thornberry. *Id.* at ¶ 22. The affidavit of probable cause also falsely claims, according to Plaintiff, that she was responsible for the

mistreatment of the Mississippi herd, and was aware that Ms. Thornberry's property did not contain any shelter, barn or stalls for the horses, and therefore, intentionally placed the horses in harm's way. *Id.* at ¶ 18.

Plaintiff alleges that Officer James, in deciding to charge Plaintiff with animal neglect, was influenced by people on social media who harbor animosity towards Plaintiff and who exerted pressure on Officer James to find some wrongdoing by Plaintiff. *Id.* at ¶ 27. Plaintiff further alleges that Officer James intentionally charged her with serious crimes based on fabricated and/or false information. *Id.* at ¶ 28.

Plaintiff alleges that Defendants were not qualified to determine the proper and legal conditions for caring for horses, and Officer James has not been adequately trained by Paws Against Pittsburgh ("Paws") in investigating, charging and prosecuting crimes relating to animal neglect, and horses in particular. *Id.* at ¶ 13. Moreover, Plaintiff alleges that Paws has a duty to properly train, control, discipline and/or supervise its agent, Officer James, and it failed to do so. *Id.* at ¶¶ 33-34.

In addition, Plaintiff alleges that Paws was aware of Officer James' alleged unlawful conduct. *Id.* at ¶ 32. At all relevant times, Plaintiff contends that Officer James was a board member of Paws and a policymaker, whose unlawful actions constitute an official policy or custom of Paws.

As a result of Defendants' alleged misconduct, Plaintiff contends that she suffered harm to her reputation, in the form of denial of membership to clubs in her field, and loss of prospective business and employment opportunities, and her credibility has been destroyed in the equine and animal rescue field. *Id.* at ¶¶ 29-30.

Plaintiff also contends that she has suffered severe emotional distress, which lead to a hospitalization and for which she continues to receive medical treatment. *Id.* at ¶ 31.

On June 15, 2018, Plaintiff instituted this civil rights action and, subsequently, filed an Amended Complaint on September 18, 2018. In response, Defendants filed the pending motion to dismiss pursuant to Rule 12(b)(6). The motion has been fully briefed and therefore is ripe for disposition.

## II. <u>LEGAL STANDARD</u>

In deciding a motion to dismiss under Rule 12(b)(6), the courts apply the following standard, as recently reiterated by the court of appeals:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016).

Building upon the landmark Supreme Court decisions in *Twombly* and *Iqbal*, the court of appeals in *Connelly* reiterated the three-step process district courts must undertake to determine the sufficiency of a complaint:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

*Id.* at 787.

At the motion to dismiss stage, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss[,]" but need only allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly*, 809 F.3d at 788-89 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)) (footnote omitted).

## III.    <u>ANALYSIS</u>

In order to "state a claim of liability under § 1983, [the plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted).  Section 1983 does not create

rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Defendants do not appear to be challenging whether they are state actors in their motion to dismiss.[2]  In her responsive brief, Plaintiff submits that Defendants satisfy the state actor requirement because they are entities statutorily authorized to enforce Pennsylvania laws pertaining to criminal cruelty to animals violations under 18 PA. CONS. STAT. ANN. § 5511,[3] citing *Allen v. Pennsylvania Society for the Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450, 454 (M.D. Pa. 2007).  *See also Kauffman v. Pa. Soc. for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 566 (E.D. Pa. 2011) (PSPCA agent's undercover search of alleged abuser's property was conducted pursuant to 18 PA. CONS. STAT. ANN. § 5511(i), and thus, agent was a state actor for § 1983 purposes because he "exercised 'powers traditionally exclusively reserved to the State.'") Based on the district court's decisions in *Allen* and *Kauffman*, it appears that Defendants satisfy the state actor requirement.  Therefore, the Court turns to the question of whether Plaintiff has stated plausible claims against Defendants for violations of her constitutional rights.

_____

[2] Plaintiff has alleged in her Amended Complaint that at all relevant times, Officer James was exercising her powers as a state actor and humane police officer on behalf of, and as an employee and board member of, Paws.  Am. Compl., ¶ 38.  Plaintiff further alleges that Paws provided Officer James with resources and otherwise aided and abetted in her unlawful investigation and prosecution of Plaintiff.  *Id.*

[3] Section 5511 was repealed by 2017, June 28, P. L. 215, No. 10, § 3, effective August 28, 2017.  Subsequently, the Pennsylvania legislature enacted 18 PA. CONS. STAT. ANN. § 5531 *et seq.* to replace §§ 5511 to 5511.3.

### A. § 1983 Claim for Malicious Prosecution Under 14th Amendment Procedural Due Process Clause - Count I

#### 1. Plausibility

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court held, in a plurality opinion, that there is no *substantive* due process right under the Fourteenth Amendment to be free from malicious prosecution. *Id.* at 273. The Court held that when "a particular Amendment 'provides an explicit textual source of constitutional protection' . . . 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In the case at bar, Plaintiff maintains that she is bringing a *procedural* due process claim for malicious prosecution under the Fourteenth Amendment, and as such, it is not precluded by *Albright*.

In support of their motion to dismiss, Defendants argue that Plaintiff has failed to plead sufficient facts to establish three of the five elements of a § 1983 malicious prosecution claim. Defendants' analysis of Plaintiff's § 1983 malicious prosecution claim is essentially an analysis under the Fourth Amendment.[4]

---

[4] To prevail on a Fourth Amendment malicious prosecution claim brought under § 1983, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beechwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Here Defendants argue that the Amended Complaint fails to allege sufficient facts to establish the third, fourth, and fifth elements. Although Plaintiff disputes that she is limited to a Fourth Amendment analysis, she argues, nonetheless, that she has sufficiently pled all of the elements of a § 1983

In response, Plaintiff submits that Defendants are attempting to limit the avenues in which she can pursue a malicious prosecution claim, *i.e.*, limiting her avenue to the Fourth Amendment. Plaintiff contends that the court of appeals for this Circuit has found that a claim for malicious prosecution in a § 1983 action can "be based on a constitutional provision other than the Fourth Amendment, including the procedural component of the Due Process Clause, so long as it [is] not based on substantive due process[,]" quoting *Merkle v. Upper Dublin School District*, 211 F.3d 782, 792 (3d Cir. 2000) (citing *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998)). However, the language cited from *Torres* by the *Merkle* court is actually dicta, as the only constitutional claim appealed in *Torres* was the malicious prosecution claim under the *Fourth* Amendment. *See Torres*, 163 F.3d at 172. Moreover, while the court of appeals in *Merkle* acknowledged that a malicious prosecution claim could be based on a constitutional provision other than the Fourth Amendment, the plaintiff predicated her § 1983 malicious prosecution claims on the First and Sixth Amendments. 211 F.3d at 792. Therefore, neither the *Torres* court nor the *Merkle* court considered whether a malicious prosecution claim was viable under the procedural due process clause of the Fourteenth Amendment.

This Court's own research has not uncovered any decision of the Supreme Court

---

malicious prosecution claim to show that it is plausible under *Twombly*. However, Plaintiff does not address the fifth element—seizure—at all. Based on facts alleged, it does not appear that Plaintiff can satisfy the fifth element of a § 1983 malicious prosecution claim.

or the U.S. Court of Appeals for the Third Circuit in which a malicious prosecution claim under the procedural due process clause of the Fourteenth Amendment has been determined to be viable. *See Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 381 (E.D. Pa. 2018) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 290 n. 14 (3d Cir. 2014) (describing the case law in this Circuit as inconsistent regarding whether the procedural due process clause protects against malicious prosecution). In *Halsey,* the court of appeals observed:

> [W]hile Halsey pled both Fourth and Fourteenth Amendment malicious prosecution counts, at some point in the proceeding—certainly by the time of the appeal—he abandoned the Fourteenth Amendment iteration of the malicious prosecution claim, thus obviating the need for us to decide its viability. *Compare Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir.1998) (reaffirming that section 1983 malicious prosecution claims cannot be based on substantive due process but declining to decide whether they could be grounded in procedural due process), *with Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir.1998) (suggesting that Supreme Court case law leaves only the Fourth Amendment as potential source of malicious prosecution claims).

750 F.3d at 290 n. 14. As such, no precedent exists in this Circuit or in the Supreme Court establishing the viability of a § 1983 malicious prosecution claim under the procedural due process clause of the Fourteenth Amendment.[5]

_____

[5] Although Plaintiff maintains that she is bringing her malicious prosecution claim under the procedural due process clause of the Fourteenth Amendment, she does not offer any discussion or explanation as to how the procedural due process elements are met here, or how they are implicated with respect to her malicious prosecution claim. To prevail on a procedural due process claim under § 1983, a plaintiff must prove:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due

Therefore, because no binding precedent exists recognizing the viability of a § 1983 malicious prosecution claim under the Fourteenth Amendment procedural due process clause, the Court finds that Plaintiff has failed to state a viable constitutional violation under the Fourteenth Amendment due process clause based on malicious prosecution.

## 2. Qualified Immunity

Even if such a right would exist, qualified immunity would still preclude her claim. Defendants submit that the doctrine of qualified immunity precludes liability on the part of Officer James. In support, Defendants argue that for the reasons stated in their brief, Plaintiff has failed to plead a plausible claim for malicious prosecution in violation of her Fourteenth Amendment due process rights, and even if she had, that right was not clearly established at the time the criminal complaint was filed.

In response, Plaintiff submits that it does not appear Defendants are arguing that the constitutional rights violations against her were not clearly established. A review of Defendants' brief proves that Plaintiff's contention is clearly wrong. Next, Plaintiff

---

process; (4) that the Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Rockledge Dev. Co. v. Wright Twp.,* 767 F.Supp. 2d 499, 502 (M.D.Pa.2011) (citing *Sample v. Diecks,* 885 F.2d 1099, 1113–14 (3d Cir.1989)). The Court cannot glean a protected liberty or property interest, or the process that was allegedly denied, from the factual allegations in the Amended Complaint.

contends that based on two district court decisions from our sister court in the Eastern District, humane police officers are only entitled to invoke a qualified immunity defense when working under "close official supervision of the approving assistant district attorney and magistrate judge[, which] exists when a government actor directly inspects or directs a private individual's behavior."  Pl.'s Br. at 10 (citing *Bamont v. Pa. SPCA*, 163 F. Supp. 3d 138, 145 (E.D.Pa. 2016); *Kauffman v. Pa. SPCA*, 766 F. Supp. 2d 555, 560-61 (E.D.Pa. 2011)).  Plaintiff submits that the Amended Complaint does not contain any facts to show that Officer James worked under the close supervision of the district attorney or magistrate judge, and therefore, she is not entitled to qualified immunity.

In this Court's view, the *Kauffman* court's examination of the history of the common law was too narrow and conflicts with the Supreme Court's decision in *Filarsky v. Delia*, 566 U.S. 377 (2012).  In *Filarsky*, the Supreme Court held that a private individual (attorney) retained by the government to assist in conducting a critical investigation into potential wrongdoing was entitled to seek qualified immunity from suit under § 1983.  *Id.* at 393-94.  In so holding the Supreme Court noted that historical tradition supports qualified immunity for "individuals engaged in law enforcement activities, such as sheriffs and constables."  *Id.* at 387.  The Supreme Court went on to observe:

> The protections provided by the common law did not turn on whether someone we today would call a police officer worked for the government full-time or instead for both public and private employers. Rather, at common law, "[a] special constable, duly appointed according to law, ha[d] all the powers of a regular constable so far as may be necessary for the proper discharge of the special duties intrusted to

13

him, and in the lawful discharge of those duties, [was] as fully protected as any other officer." W. Murfee, A TREATISE ON THE LAW OF SHERIFFS AND OTHER MINISTERIAL OFFICERS § 1121, p. 609 (1884).

*Id.* at 387-88. The Supreme Court's review of the history of common law revealed examples of individuals receiving immunity for actions taken while engaged in public service on a temporary or occasional basis "as varied as the reach of government itself." *Id.* at 388-89 (listing for e.g., public wharfmaster for non-malicious acts; discretionary acts of public notaries acting in good faith; private individuals appointed by sheriff to service as judges of an election absent showing of malice) (citations omitted). Thus, the court concluded:

> We read § 1983 "in harmony with general principles of tort immunities and defenses." *Imbler, 424 U.S., at 418, 96 S.Ct. 984.* And we "proceed[ ] on the assumption that common-law principles of ... immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do so." *Pulliam v. Allen, 466 U.S. 522, 529, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).* Under this assumption, immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis.

*Id.* at 389. With regard to whether the granting qualified immunity to private individuals would comport with the purpose of § 1983, the Supreme Court opined that:

> We have called the government interest in avoiding "unwarranted timidity" on the part of those engaged in the public's business "the most important special government immunity-producing concern." [*Richardson*, 521 U.S.] at 409, *117 S.Ct. 2100.* Ensuring that those who serve the government do so "with the decisiveness and the judgment required by the public good," *Scheuer v. Rhodes, 416 U.S. 232, 240, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974),* is of vital importance

> regardless whether the individual sued as a state actor
> works full-time or on some other basis.
>
> Affording immunity not only to public employees but also
> to others acting on behalf of the government similarly serves
> to "'ensure that talented candidates [are] not deterred by the
> threat of damages suits from entering public service.'"
> *Richardson*, *supra*, at 408, 117 S.Ct. 2100 (quoting *Wyatt*, *supra*,
> at 167, 112 S.Ct. 1827).

*Id.* at 390; *see also id.* at 398 (there exists a "'firmly rooted' tradition of immunity" that applies to "individuals who perform government work in capacities other than as formal employees . . . [a]nd conferring qualified immunity on individuals like Filarsky helps 'protec[t] government's ability to perform its traditional functions,' and thereby helps 'protect the public at large.'") (Sotomayor, J. concurring) (citations omitted).

Pennsylvania statutory law provides that an agent of the SPCA has "the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure." 18 PA. CONS. STAT. ANN. § 5551. This power necessarily includes the power of humane society police officers to conduct investigations and to provide affidavits of probable cause in support of arrest warrants based on their investigations. Here it is clear that Officer James was exercising the powers granted to her under the Pennsylvania animal cruelty laws when she allegedly committed the constitutional torts against Plaintiff. Plaintiff alleges that Officer James' investigation of potential animal neglect at Ms. Thornberry's facility and Plaintiff's complicity in it formed the basis of the affidavit of probable cause supporting the warrant for her arrest. Moreover, the affidavit of probable cause Officer James prepared in support of the arrest warrant must be sworn to before the issuing authority, i.e., a magisterial district

judge,[6] who in turn, issues the arrest warrant.  Pa. R. Crim. P. 513(B)(2).  Because Officer James was exercising the powers granted to her under Pennsylvania animal cruelty laws, and was subject to oversight by the Indiana County District Attorney's Office, this Court concludes that she was performing government work at the time of the alleged constitutional torts.  Therefore, the Court finds that Officer James is entitled to invoke a qualified immunity defense.

Because the Court has determined that Officer James is entitled to invoke the defense of qualified immunity, it will now turn to a discussion of whether Officer James has shown that qualified immunity should be applied here.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, government officials are put on notice that their conduct is unlawful.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

---

[6] Rule 103 of the Pennsylvania Rules of Criminal Procedure define "issuing authority" as "any public official having the power and authority of a magistrate, a Philadelphia arraignment court magistrate, or a magisterial district judge."

In determining whether qualified immunity applies, the courts conduct a two-pronged inquiry. *Pearson*, 555 U.S. at 232; *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, the court must determine "whether the facts that the plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Spady,* 800 F.3d at 637 (quoting *Pearson*, 555 U.S. at 232). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). In conducting this analysis, courts have the discretion to decide which of the two prongs should be addressed first based on the circumstances of the particular case. *Pearson*, 555 U.S. at 236.

As the Court noted above, no binding precedent exists establishing the viability of a § 1983 malicious prosecution claim under the procedural due process clause of the Fourteenth Amendment. As such, Plaintiff has failed to establish a violation of a constitutional right based on malicious prosecution under the Fourteenth Amendment procedural due process clause.

Moreover, based on the above discussion, a Fourteenth Amendment procedural due process right against malicious prosecution was not clearly established at the time Plaintiff was charged with animal neglect. The charges were filed against Plaintiff were presented in a criminal complaint on February 28, 2018, based on an affidavit that allegedly lacked probable cause. As of that date and currently, neither the Supreme Court nor the U.S. Court of Appeals for the Third Circuit has recognized the viability of a § 1983 malicious prosecution claim under the Fourteenth Amendment procedural due process clause.

Recently, several district courts in this circuit have considered whether police officers were entitled to qualified immunity from a § 1983 claim for malicious prosecution in violation of the procedural due process clause under the Fourteenth Amendment. *See, e.g., McCormack v. Livergood*, 353 F. Supp. 3d 357, 364 (M.D. Pa. 2018); *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 281-82 (E.D.Pa. 2018); *Wiggins v. McAndrew*, Civ. A. No. 3:17-1410, 2018 WL 3727389, *6-*7 (M.D. Pa. Aug. 6, 2018). In those cases, the district court noted that the "'Third Circuit Court of Appeals has not actually decided whether such a procedural due process right exists.'" *McCormack*, 353 F. Supp. 3d at 364 (quoting *Thomas*, 290 F. Supp. 3d at 381); *Wiggins*, 2018 WL 3727389, at *6-*7 (citing *Thomas*, *supra*). The court in *Thomas* "concluded that the procedural due process right against malicious prosecution was not clearly established because the Supreme Court had not yet articulated such a right, and the Third Circuit stopped short of

deciding the right's viability in 2014."[7] 290 F. Supp. 3d at 383. As such, the *Thomas* court, and the courts in *McCormack* and *Wiggins*, relying on *Thomas*, held that the individual defendants had qualified immunity from a § 1983 claim for malicious prosecution in violation of the Fourteenth Amendment procedural due process clause. *Thomas*, 290 F. Supp. 3d at 383; *McCormack,* 353 F. Supp. 3d at 364; *Wiggins*, 2018 WL 3727389, at *6-*7. The Court concurs with this conclusion.

Therefore, since the right was not clearly established on February 28, 2018, Officer James is entitled to qualified immunity from Plaintiff's § 1983 claim for malicious prosecution under the procedural due process clause of the Fourteenth Amendment.

### B. Count II – § 1983 Reckless Investigation Claim

#### 1. Plausibility

Defendants submit that Plaintiff's reckless investigation claim under § 1983 must be dismissed because the Third Circuit has expressed doubt as to whether an independent substantive due process right to be free from a reckless investigation exists, citing *Johnson v. Logan*, 721 F. App'x 205, 207-08 (3d Cir. 2018) (citing *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009)). Even if such a right does exist, Defendants argue that Plaintiff has failed to make a showing of intentional, reckless, or conscience-shocking behavior on their part.

In response, Plaintiff argues that the court of appeals' expression of doubt in

---

[7] The district court in *Thomas* was referring to the 2014 decision of the court of appeals in *Halsey*, 750 F.3d at 290 n. 14.

*Johnson*, placed in a footnote, is unquestionably dicta, and therefore, not controlling. Plaintiff further contends that the court of appeals made it clear in *Johnson* that it was not deciding to disregard reckless investigation claims. Moreover, Plaintiff points to several decisions in this district where plaintiffs have been allowed to proceed on § 1983 claims for reckless investigation. *See, e.g., Thomas v. Stanek*, No. 2:14-cv-1415, 2015 WL 757574, *7-8 (W.D. Pa. Feb. 23, 2015); *Whitley v. Allegheny Cty.*, Civ. A. No. 07-403, 2010 WL 892207, *37 (W.D. Pa. Mar. 9, 2010), *aff'd* 402 F. App'x 713 (3d Cir. 2010); *Johnson v. Logan*, Civ. A. No. 14-1230, 2016 WL 7187842, *6-7 (W.D. Pa. Dec. 12, 2016), *aff'd* 721 F. App'x 205 (3d Cir. 2018). Given the recognition of reckless investigation claims by this district, Plaintiff asks the Court to deny Defendants' motion to dismiss her § 1983 reckless investigation claim.

In *Johnson v. Logan*, Judge Bissoon succinctly stated the requirements for establishing a constitutional due process claim based on reckless investigation:

> "To bring a successful due process claim for failure to investigate, a plaintiff must show that a police officer acted intentionally or recklessly, in a manner that shocks the conscience, in failing to investigate." *Thomas v. Stanek*, 2015 WL 757574, at *7 (W.D. Pa. 2015) (citing *Wilson v. Lawrence Cnty., Mo.*, 260 F.3d 946, 955 (8th Cir. 2001)); *Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 653 (E.D. Pa. 2010), *aff'd*, 515 Fed.Appx. 93 (3d Cir. 2013) (citing *Martin v. Anderson*, 2008 WL 4761734, at *9 n.8 (E.D. Pa. Oct. 30, 2008)). "Failure to investigate is considered in tandem with the strength or weakness of the probable cause evidence." *Id.* Thus, "[w]here probable cause evidence is weak, officers may have a greater duty to consider potential exculpatory evidence." *Id.* (citing *Walker v. Spiller*, 1998 WL 306540, at *6 (E.D. Pa. June 9, 1998)). However, merely a "negligent failure to investigate does not create liability." *K.L.Q. v. Plum Borough Sch. Dist.*, 2016 WL 2892174, at *6 (W.D. Pa. May 17, 2016).

*Johnson v. Logan*, Civ. A. No. 14-1230, 2016 WL 7187842, at \*6 (W.D. Pa. Dec. 12, 2016).

The district court in that case granted summary judgment for the police officers on the reckless investigation claims because plaintiff did not introduce any evidence that the failures in the investigation were due to intentional, reckless, or conscience-shocking behavior. *Id.* at \*7. The court of appeals affirmed Judge Bissoon's decision, even though it expressed doubt as to the whether an independent substantive due process right to be free from a reckless investigation exists. By affirming the district court's decision, the court of appeals was not asked to decide the viability of a stand-alone reckless investigation claim. Therefore, this Court does not construe the court of appeals affirmance of the district court as endorsing the viability a stand-alone reckless investigation claim under the substantive due process clause and the viability of such a claim is questionable, at best.

Defendants also argue that even if such a right exists, Plaintiff has failed to allege facts showing intentional, reckless, or conscience-shocking behavior on their part. Plaintiff has not responded to this argument. However, other than Defendants' conclusory statement, Defendants do not provide any analysis or support for their conclusion. Defendants do not even set forth the elements of a reckless investigation claim. The Court is not required to consider conclusory, undeveloped arguments and declines to do so here. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (an argument consisting of no more than a conclusory statement will be deemed waived); *Massie v. U.S. Dep't of Housing & Urban Dev.*, Civ. A. No. 06-1004, 2007 WL 184827, \*3 n.

5 (W.D. Pa. Jan. 19, 2007) (finding a one sentence assertion of a legal argument, which lacks any substantive or meaningful analysis, was undeveloped and wholly inadequate), *vacated in part on other grounds on reconsideration*, 2007 WL 674597 (W.D. Pa. Mar. 1, 2007) (citing *Pennsylvania v. U. S. Dep't of Health & Human Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) ('stating that conclusory assertions, unaccompanied by a substantial argument, will not suffice to bring an issue before the court")). Accordingly, the Court concludes that Defendants have failed to show they are entitled to dismissal of Plaintiff's reckless investigation claim based on a *Twombly* plausibility analysis.

### 2. Qualified Immunity

In the alternative, Defendants seek dismissal of Plaintiff's Fourteen Amendment reckless investigation claim against Officer James on qualified immunity grounds. In support, Defendants argue that Officer James is entitled to qualified immunity because Plaintiff has failed to state a plausible constitutional violation against Officer James, and the right to be free from a reckless investigation was not clearly established at the time the district attorney signed and filed the criminal complaint against Plaintiff.

As this Court noted above, the viability of a stand-alone right to be free from a reckless investigation under the substantive due process clause is questionable at best. Moreover, assuming such a stand-alone right does exist, Defendants failed to show that it lacked plausibility. Thus, the Court turns to the second prong of *Pearson* to determine whether Officer James is entitled to qualified immunity.

As to whether such a right was clearly established in February of 2018, the Court observes that "the general right to 'obtaining fair criminal proceedings' was well-

established by *Brady v. Maryland*, 373 U.S. 83, 87 [ ] (1963) (suppression of exculpatory evidence violates due process), and *Napue* [*v. State of Illinois*, 360 U.S. 264, 269 (1959)] (use of false evidence at trial violated due process)." *See White v. Smith*, 696 F.3d 740, 759 (8th Cir. 2012) (quoting *Wilson v. Lawrence Cty.*, 260 F.3d 946, 957 (8th Cir. 2001)). The Eighth Circuit has held that the right to be free from a reckless investigation was clearly established in that circuit in 1986. *Id.*

On the other hand, the court of appeals for the Fifth Circuit has refused to recognize a free-standing right to be free from a reckless investigation, finding that a negligent or reckless investigation is actually conduct that supports § 1983 claims for false arrest and illegal detention. *See Hernandez v. Terrones*, 397 F. App'x 954, 966 (5th Cir. 2010) (citing *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992)). Similarly, a number of other circuits have concluded that no free-standing right to be free from reckless investigation exists under the substantive due process clause of the Fourteenth Amendment. *See, e.g., Buchanan v. Metz*, 6 F. Supp. 3d 730, 757 (E.D. Mich. 2014) (noting that the Sixth Circuit has not recognized a Fourteenth Amendment substantive due process claim for a "sham investigation"); *id.* at 757-58 (noting Sixth Circuit's past refusal to extend the "shocks the conscience" standard beyond cases involving physical abuse); *id.* at 758 (noting bulk of the case law from other circuits supports the court's conclusion that a substantive due process claim under the Fourteenth Amendment is not available for inadequate investigations, and Supreme Court's edict in *Albright* that the Amendment providing an explicit textual source of constitutional protection against a particular sort of government behavior applies rather than the generalized notion of

substantive due process, and allegations of an inadequate investigation/ignoring evidence directly implicated the Fourth Amendment's protections against malicious prosecution and arrest without probable cause); *Freeman v. Town of Hudson*, 714 F.3d 29, 41 (1st Cir. 2013) (substantive due process claim for pursuing "unsupported criminal charge against [the plaintiff] for personal reasons" was merely "a garden-variety claim of malicious prosecution."); *Alexander v. McKinney*, 692 F.3d 553, 557-58 (7th Cir. 2012) (rejecting Fourteenth Amendment substantive due process violation, arising out of initial arrest, against prosecutor who allegedly manufactured false evidence while performing an investigatory function because plaintiff could not "recast his untimely Fourth Amendment claim . . . by combining it with a state law malicious prosecution claim and simply changing the label of the claim to substantive due process"); *Becker v. Kroll,* 494 F.3d 904, 922-23 (10th Cir. 2007) (declining to extend substantive due process claim to allegation of a "groundless investigation designed to obtain civil penalties" from the plaintiff); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004) (finding that the "principle that *Albright* establishes is that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause"); *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) (finding that no constitutional right to an adequate investigation exists).

In light of the Supreme Court's edict in *Albright*, the lack of binding precedent recognizing a viable, stand-alone right to be free from a reckless investigation under the substantive due process clause, the fact that the district court cases in this Circuit recognizing such a right were decided prior to the Third Circuit's dicta in the *Johnson*

appeal, and the majority of circuits do not recognize a stand-alone right to be free from reckless investigation, the Court finds that any such right, if it indeed exists, was not established at the time the criminal complaint was filed against Plaintiff in February of 2018.   As such, Officer James is entitled to qualified immunity from liability on Plaintiff's Fourteenth Amendment reckless investigation claim.

Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's Fourteenth Amendment reckless investigation claim.[8]

## C.      Liability of Paws Under *Monell*

Defendants argue that Paws cannot be held liable under Section 1983 for two reasons:  (1) to the extent Plaintiff is attempting to establish Section 1983 liability against Paws based upon a respondeat superior theory, that basis has been rejected by the court of appeals; and (2) under the municipal liability standard set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Plaintiff has failed to allege sufficient facts to support a plausible claim for failure to train its humane police officers.   In response, Plaintiff does not address Defendants' respondeat superior argument, but instead submits that she

---

[8] In the alternative, Officer James argues that she is immune from civil liability for her actions in charging Plaintiff with animal neglect pursuant to 18 Pa. Cons. Stat. Ann. §5557.  Section 5557 provides that "[a] humane society police officer acting in good faith and within the scope of the authority provided under this subchapter shall not be liable for civil damages as a result of an act or omission in the course of an investigation or enforcement action."  *Id.*  The Court need not reach this argument in light of the Court's rulings on Defendants' qualified immunity argument.  Nonetheless, it is questionable whether §5557 immunity from liability for acts or omissions by humane society police officers, authorized by state cruelty to animals laws, would apply to federal constitutional claims.

has adequately plead a plausible *Monell* claim against Paws for failure to properly train, control, and/or supervise Officer James.

In *Monell*, the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. §1983. In so ruling, however, the Supreme Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Supreme Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id.*

However, a municipality cannot be liable under Section 1983 unless it can be shown that plaintiff suffered a constitutional injury at the hands of its individual police officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining an underlying constitutional violation by the individual defendant is a prerequisite to finding municipal liability); *see also Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) (finding that as all individually sued officers were not liable for civil rights violations, municipality was not liable). Here, the Court has found that Officer James is entitled to qualified immunity on Plaintiff's Fourteenth Amendment malicious prosecution and reckless investigation claims. As there are no constitutional claims

remaining against Officer James, Plaintiff's *Monell* liability claim against Paws must be dismissed.

**D.    Punitive Damages**

Defendants submit that Plaintiff is not entitled to punitive damages because she has failed to state a § 1983 claim of malicious prosecution or reckless investigation against Defendants.  As such, she has not shown a reckless or callous disregard or indifference to her rights and safety, as well intentional violations of the law, as required to obtain punitive damages against Officer James.

It is well established that punitive damages are not available against municipalities for § 1983 claims.  *City of Newport v. Fact Concerts,* 453 U.S. 247 (1981). However, punitive damages may be pursued against individual state actors upon proof that their conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade,* 461 U.S. 30, 56 (1983); *Keenan v. City of Phila.*, 983 F.2d 459 (3d Cir. 1992).

Because the Court has found that Officer James is entitled to qualified immunity on the Fourteenth Amendment malicious prosecution and reckless investigation claims, no claims remain against Officer James upon which punitive damages can be assessed. However, because the Court will allow Plaintiff to file an amended complaint, *see* Discussion *infra* in Part E, she may reassert a claim for punitive damages if the factual allegations of the second amended complaint support such damages against Officer James.

**E.    Leave to Amend**

In the alternative, Plaintiff submits that should this Court find that her § 1983 malicious prosecution claim under the Fourteenth Amendment procedural due process clause is not viable, that she be allowed to amend her complaint to add a stand-alone, constitutional fabrication of evidence claim.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires."  In *Foman v. Davis,* the Supreme Court delineated  the grounds that would justify denying leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment".  *Foman v. Davis,* 371 U.S. 178, 182 (1962).

In *Halsey*, the court of appeals did recognize a stand-alone § 1983 fabrication of evidence claim under the due process clause of the Fourteenth Amendment, separate from a malicious prosecution claim.  750 F.3d at 294 (fabricated evidence claim under the Fourteenth Amendment could proceed when a § 1983 plaintiff was convicted at trial).  *Compare Black v. Montgomery Cty.,* 835 F.2d 358, 369 (3d Cir. 2016) (holding that a stand-alone Fourteenth Amendment fabrication of evidence claim could proceed where there was an acquittal; a conviction was not required).  Thus, it appears that it would not be futile to allow Plaintiff to add a claim for a stand-alone claim for fabrication of evidence under the Fourteenth Amendment.  Moreover, given the early stage of the proceedings here, and the lack of any evidence of undue delay or dilatory motive on Plaintiff's part, the Court finds that Defendants will not suffer any undue prejudice by

allowing Plaintiff to amend her complaint. Therefore, the Court will allow Plaintiff to amend her complaint to add a Fourteenth Amendment fabrication of evidence claim.

Because the Court is allowing Plaintiff to file a second amended complaint, she may also reassert her claim for *Monell* liability against Paws and her claims for punitive damages against Officer James, if she so desires.

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss the Amended Complaint.   The following claims are dismissed **with prejudice**: Plaintiff's § 1983 claim for malicious prosecution in violation of the Fourteenth Amendment procedural due process clause in Count I, and Plaintiff's § 1983 claim for reckless investigation in violation of the Fourteenth Amendment substantive due process clause in Count II.  The following claims are dismissed **without prejudice**: Plaintiff's § 1983 *Monell* claim against Paws and Plaintiff's request for punitive damages.  Plaintiff may file a curative amended complaint to add a stand-alone Fourteenth Amendment fabrication of evidence claim, and to reassert her *Monell* claim against Paws and punitive damages claim against Officer James, if desired.   A separate order follows.

Dated:  April 2, 2019                                    BY THE COURT:

_____

LISA PUPO LENIHAN
United States Magistrate Judge

cc: All Counsel of Record
*Via CM/ECF Electronic Filing*