IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOY BRAUNSTEIN, ) | |
| ) | Civil Action No. 2:18-cv-00788 |
| Plaintiff, ) | |
| ) | HONORABLE LISA PUPO LENIHAN |
| v. ) | |
| ) | |
| PAWS ACROSS PITTSBURGH, ) | JURY TRIAL DEMANDED |
| a non-profit organization, and ) | |
| MINDY JAMES, an individual, ) | |
| ) | |
| Defendants. ) | Electronically Filed. |

SECOND AMENDED COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, JOY BRAUNSTEIN, by and through her attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files this Second Amended Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1. This is an action for the redress of grievances and in vindication of civil rights guaranteed to the Plaintiff under the Constitution of the United States and the laws enacted in furtherance thereof, including 42 U.S.C. § 1983.

2. This action is brought against the Defendant for violating Plaintiff's rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

3. Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).

4. Venue is proper under 28 U.S.C.A. § 1391(b). All claims set forth herein arose in the Western District of Pennsylvania.

## PARTIES

5.      Plaintiff, Joy Braunstein, is an adult individual who resides in Allegheny County, Pennsylvania.

6.      Defendant, Paws Across Pittsburgh ("PAP"), is a Pennsylvanian non-profit organization, society or association duly incorporated pursuant to 15 Pa.C.S. § 53(A) for the purpose of the prevention of cruelty to animals, located at 346 Orchard Street Springdale, Pennsylvania 15144. At all times relevant hereto, the Defendant was acting through its agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment.

7.      Defendant, Mindy James ("James"), is now, and was at all times relevant to Plaintiff's claims, a duly appointed and acting police officer, board member and policy-maker of Defendant PAP for the purpose of the prevention of cruelty to animals, purporting to act within the full scope of her authority and office, and under color of state law, and pursuant to the statutes, ordinances, regulations and customs and usages of the Commonwealth of Pennsylvania.  At all times relevant to this action, Defendant James was authorized to conduct police activities related to Defendant PAP's mission pursuant to 22 Pa.C.S. § 3701, et. seq.

## FACTUAL ALLEGATIONS

8.      Plaintiff, Joy Braunstein, is the principal owner and CEO of Above the Fray Stables, LLC, a specialty equine business that offers boarding care, colt starting and horse training, as well as horsemanship and showmanship instruction to the general public, and is located at 1512 Washington Road, Apollo, Pennsylvania 15613.

9.      Over the last two years, Plaintiff has spent over $100,000, through her business, rescuing and relocating horses, and can be credited with rescuing dozens of horses.

10. As a part of her ongoing business operations, Plaintiff developed a professional, cooperative relationship with Crystal Thornberry ("Thornberry"), who is the owner of Heart Felt Equine Rescue, a non-profit organization specializing in equine rescue. Prior to Plaintiff taking over her own facility in February, 2018, Plaintiff would request Ms. Thornberry, among other foster homes and facilities, to take custody of various rescued horses.

11. On or about February 28, 2018, Defendant James, a police officer for Defendant PAP, pursuant to 22 Pa.C.S. § 3701, et. seq., unlawfully charged Plaintiff with two counts of misdemeanor neglect of animals in failing to provide horses with adequate food, water and shelter. Defendant James alleged that the Plaintiff knew that horses in her care were dying or in eminent danger of dying.

12. The allegations set forth in the affidavit of probable cause prepared by Defendant James to support the warrant of arrest were, and are, materially false. As such, the charges brought by Defendant James were without probable cause.

13. At all times relevant to this Complaint, Defendants PAP and James were not qualified to determine the proper and legal conditions for caring for horses. Moreover, Defendant James has not been adequately trained by Defendant PAP in investigating, charging and prosecuting crimes related to animal neglect, and horses in particular.

14. At all times relevant to this matter, all of the horses that formed the basis of the allegations made by Defendant James in her affidavit of probable cause that the Plaintiff was responsible for were well taken care of and healthy. The allegations in the affidavit of probable cause for which Plaintiff was criminally charged consist of either misrepresentations of facts or complete fabrications of the incidents in question.

15. In her affidavit of probable cause, Defendant James wrote that Plaintiff worked closely with Ms. Thornberry, who was also criminally charged by Defendant James prior to Plaintiff's arrest, and that Plaintiff knew and was responsible for several horses that were left in the care of Ms. Thornberry, who, it is alleged, did not provide proper shelter or care for the horses.

16. Plaintiff was and is unaware of any facts that established that Ms. Thornberry maintained and ran her business in any improper way, or that she failed to properly care for horses at her facility, or that she placed horses in her care in any danger whatsoever.

17. From in or about August to November, 2017, Plaintiff became aware of three horses that died under Ms. Thornberry's care. However, to Plaintiff's knowledge, the cause of death in each instance was not related to a failure to care for the horses or by placing the horses in unsafe conditions. Therefore, the deaths of these animals were not an indication that other animals under Ms. Thornberry's care were at risk of harm or otherwise illegal conduct.

18. In the affidavit of probable cause, Defendant James falsely claimed that Plaintiff was responsible for the mistreatment of a herd of horses shipped from Mississippi to Ms. Thornberry's farm in July, 2017, and that Plaintiff was aware that Ms. Thornberry's property contained no shelter, barn or stalls for the horses, and, therefore, Plaintiff was intentionally placing the animals in harm's way.

19. In this matter, Plaintiff and Ms. Thornberry worked together to transfer a herd of horses from Mississippi to Ms. Thornberry's facility in Pennsylvania. Plaintiff was only physically on Ms. Thornberry's property once, in or about August, 2017, and interacted with the animals on only a portion of Ms. Thornberry's property. Moreover, on that portion of property, the horses were provided shade, sufficient to fulfill Ms. Thornberry's legal obligation regarding care of the subject horses. Plaintiff was also aware that Ms. Thornberry kept the horses separated by fences.

In October, 2017, Ms. Thornberry moved to a larger property equipped with stalls, run-ins and a significant pasture.

20. Plaintiff was and is unaware of any facts that established that Ms. Thornberry placed any of the horses in her care, from this herd or otherwise, in any danger whatsoever.

21. Additionally, Plaintiff only took actions that were in the best interest of the horses and/or were at the owner's request. Plaintiff spent thousands of dollars on boarding and transferring the horses, as well as medical expenses for the horses, much of which was never reimbursed to the Plaintiff from the owner or any source.

22. In the affidavit of probable cause, Defendant James also falsely stated that Plaintiff abandoned a horse at Ms. Thornberry's farm. The horse that Defendant James was referring to was sold to Ms. Thornberry at a price agreed upon with the Plaintiff.

23. On or about January 18, 2018, Defendant James charged Ms. Thornberry with twelve counts of neglect of animals.

24. Upon notification of Ms. Thornberry's charges, Plaintiff took steps to remove all of her personal horses from Ms. Thornberry's farm, and she contacted Defendant James to find out more information regarding the charges and to plan for the removal of her horses. Plaintiff stayed in contact with Defendant James until her horses were completely removed from Ms. Thornberry's custody.

25. During one of her conversations with the Plaintiff, Defendant James confirmed that all of the horses mentioned in Defendant James' affidavit of probable cause, for which Plaintiff was responsible, were well taken care of and healthy. Despite this acknowledgement of the wellbeing of the horses in Plaintiff's care, on February 28, 2018, Defendant James charged Plaintiff with two counts of animal neglect.

26. On or about March 28, 2018, all of the charges filed against the Plaintiff were withdrawn by the Indiana County assistant district attorney due to lack of evidence.

27. Plaintiff believes, and therefore avers, that Defendant James was influenced in prosecuting the Plaintiff by people on social media who harbor animosity towards the Plaintiff. Plaintiff believes, and therefore avers, that these individuals on social media pressured Defendant James to find something that the Plaintiff had done wrong.

28. Defendant James fabricated evidence and/or relied on false information to intentionally charge the Plaintiff with serious crimes without probable cause.

29. Plaintiff believes, and therefore avers, that the actions taken by Defendant James were meant to harm the Plaintiff's reputation and to destroy her credibility in her field, which is specialty equine and animal rescue.

30. Consequently, due to the Defendants' conduct, Plaintiff's reputation has in fact been harmed as she has been denied membership to clubs in her field, has suffered a loss of prospective business and a loss of prospective employment opportunities.

31. As a result of the Defendants' unlawful conduct and the criminal charges brought against her, Plaintiff suffered severe emotional stress, which lead to a hospitalization. Plaintiff continues to receive medical treatment as a result of Defendants' unlawful conduct.

32. As a result of the aforementioned incidents, Plaintiff believes, and therefore avers, that Defendant PAP was aware of Defendant James' unlawful conduct.

33. Defendant PAP has a duty to properly train, control, discipline and/or supervise its agent, Defendant James.

34. Defendant PAP failed to properly train, control, discipline and/or supervise its agent, Defendant James.

35. Defendant PAP's failure to properly train, control and/or supervise Defendant James created a substantial risk of the constitutional violation identified herein.

36. Moreover, Defendant James, was, at all times relevant to this matter, a board member of Defendant PAP and policy-maker, whose unlawful actions, described herein, constitute official policy or custom of Defendant PAP.

## COUNT I:

### VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### FABRICATION OF EVIDENCE

37. Plaintiff incorporates by reference Paragraphs 1 through 36 as though fully set forth at length herein.

38. At all times relevant to this Complaint, Defendant James was exercising her powers as a state actor and humane police officer on behalf of and as an employee and board member of Defendant PAP. Defendant PAP provided Defendant James with resources and otherwise aided and abetted in Defendant James' unlawful investigation and prosecution of the Plaintiff.

39. Defendant PAP's failure to properly train, control and/or supervise Defendant James created a substantial risk of the constitutional violation identified herein.

40. Defendant James initiated the process of prosecution by filing criminal charges against the Plaintiff despite having actual knowledge that the claims against the Plaintiff were false.

41. Defendant James fabricated evidence and/or relied on false information to intentionally charge the Plaintiff with serious crimes without probable cause.

42. There is a reasonable likelihood that, absent that fabricated evidence, the Plaintiff would not have been criminally charged.

43. The fabrication of evidence/reliance on false information denied Plaintiff her right to due process of law under the Fourteenth Amendment to the United States Constitution.

44. Defendant James knew, or should have known through the exercise of reasonable caution, that no reasonable basis existed for the aforementioned criminal charges to be brought against Plaintiff.

45. Defendant James acted under the color of law and her actions constituted an arbitrary and unconscionable abuse of government authority.

46. As a direct and proximate result of the acts mentioned hereinbefore above perpetrated by Defendant James, Plaintiff suffered the following injuries and damages:

    a.    violation of her constitutional rights under 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution;

    b.    physical pain and suffering;

    c.    fright, horror and shock;

    d.    emotional trauma and suffering; and

    e.    Plaintiff suffered economic damages related to the loss of business and/or other consequential costs.

47. Defendant James' actions were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting Defendant James to punitive damages.

WHEREFORE, Plaintiff demands compensatory general damages against Defendants in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted

by law; punitive damages against Defendant James; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: April 15, 2019